# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>PREMISES KNOWN AS 5324 TYLER AVENUE, ARCADIA,<br>CALIFORNIA, AS FURTHER DESCRIBED AS<br>ATTACHMENT A-3 | )<br>)<br>)<br>)<br>)<br>)    Case No.  2:18-mj-00370 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Premises known as 5324 Tyler Avenue, Arcadia CA, as further described in Attachment A-3

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§  371, 545, 2342(a)<br>26 USC §§ 5762(a)(1), (3), (5) | Conspiracy to defraud US, smuggling, contraband cigarette trafficking,  unlicensed importation, excise tax evasion, possessing untaxed cigarettes |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Special Agent Rafael Torres, DHS-ICE-HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and state: _Los Angeles, California_

_____
*Judge's signature*

Hon. Frederick F. Mumm, U.S. Magistrate Judge
*Printed name and title*

AUSA: James Hughes (4961), Valerie Makarewicz (2729)

## <u>AFFIDAVIT</u>

I, Rafael Torres, being duly sworn, declare and state as follows:

### I.   <u>INTRODUCTION</u>

1.     I am a Special Agent ("SA") with the Homeland Security Investigations (HSI), and have been so employed since September 2007. I am currently assigned to HSI in Los Angeles, CA, where I investigate violations of federal law related to contraband.  In the course of my duties as an HSI SA, I have participated in and conducted investigations of narcotics smuggling, intellectual property rights violations, and other fraud-related offenses.  I received formal training regarding law enforcement techniques used to investigate the suspected commission of federal offenses at the Federal Law Enforcement Training Center.

2.     During my tenure in law enforcement, I have been involved in the use of the following investigative techniques: interviewing confidential sources and cooperating witnesses; conducting physical surveillance; conducting short and long term undercover operations; conducting reverse undercover drug operations; participating in controlled buys; conducting consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register data; requesting, collecting and analyzing billing records; reviewing invoices and reports; conducting court-authorized electronic surveillance; and conducting extensive review of financial records, tax documents and review of documents related to corporate and individual assets.  Further, I have participated in the preparation, presentation and execution of numerous search and arrest warrants which have resulted in the recovery of weapons,

narcotics, contraband cigarettes, money, financial instruments and documentary evidence indicative of fraud. Additionally, I have assisted in investigations and arrests leading to convictions for violations of federal and state laws.

## II. PURPOSE OF AFFIDAVIT

3.    This affidavit is made in support of an application for a warrant to search the following locations for items constituting evidence of violations of Title 18, United States Code, Sections 371 (conspiracy to defraud the United States), 545 (smuggling of goods into the United States), and 2342(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes), and Title 26, United States Code, Sections 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond):

a.    **407 S. POMELO AVENUE, UNIT A, MONTEREY PARK, CA** ("407 S. POMELO AVENUE");

b.    **763 FAIRVIEW AVENUE, APARTMENT A, ARCADIA, CA** ("763 FAIRVIEW AVENUE ");

c.    **5324 TYLER AVENUE, ARCADIA, CA** ("5324 TYLER AVENUE");

d.    **2014 DARK GREY HONDA ODYSSEY**, California license plate 7FVF844, VIN 5FNRL5H60EB128378, registered in the name of Great Pacific Coast Corporation, 120 S. Pico Avenue, Long Beach, CA ("SUBJECT VEHICLE 1"); and

e.    **2006 WHITE TOYOTA SIENNA**, California license plate GWZ8888, VIN 5TDZA22C56S506307, registered in the name of Wenzhu Guo, 6132 Hart Avenue, Temple City, CA ("SUBJECT VEHICLE 2").

I will herein collectively refer to 763 FAIRVIEW AVENUE, 5324 TYLER AVENUE, and 407 S. POMELO AVENUE as the "**SUBJECT LOCATIONS**"

and Subject Vehicles 1 and Subject Vehicle 2 as the "**SUBJECT VEHICLES.**"

4.    Based on the following, I respectfully submit that there is probable cause to believe the SUBJECT LOCATIONS and SUBJECT VEHICLES contain evidence of violations of Title 18, United States Code, Sections 371 (conspiracy to defraud the United States), 545 (smuggling of goods into the United States), and 2342(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes), and Title 26, United States Code, Sections 5762(a)(1) (engaging in the unlawful importation of tobacco products), 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond)(the "Target Offenses"), committed by Yong Lu, aka "David" Lu ("DAVID LU"), Wenzhu Guo, aka Wen Zhu Guo ("WENZHU GUO"), and others.

5.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. LOCATIONS TO BE SEARCHED

6.    The SUBJECT LOCATIONS to be searched are described as follows:

     a.    **407 S. POMELO AVENUE**:  A two-story, three bedroom, gray condominium/townhouse.  407 S. POMELO AVENUE is part of a

multiunit residential building containing multiple adjoined
apartment units ("Pomelo apartment building").  The Pomelo apartment
building is located on the west side of S. Pomelo Avenue and faces
east to west.  The individual units comprising the Pomelo apartment
building are accessible via a metal gate located on the north side
of building.  This gate leads to an exterior walkway running east to
west along the northern side of the building.  Each unit in the
apartment building, including the subject location, has its own
northward facing exterior entrance abutting the walkway running
along the north side of the Pomelo apartment building.  The parking
area for the Pomelo apartment building is located on the south side
of the building.  A communal driveway, located on the south side of
the building, slopes downward into a parking area.  Each unit within
the Pomelo apartment building has its own individual covered garage
that has a brown garage door, located directly beneath the first
floor of the respective units.  Based on my observation of vehicle
traffic going in and out of the building, I believe that each unit
in the Pomelo apartment building may be accessed via a secondary
door located in the garage of the respective unit.  The subject
location is the easternmost unit in the building.

i.   Below is a screenshot photograph from the online geographic imaging service Google Maps, depicting the parking area of Pomelo apartment building, located on the southern side of the building.



ii.   On the east side of the Pomelo apartment building are two house numbers in black, approximately 12' tall, numbers 407 and 409.  407 S. POMELO AVENUE is the building described above, whereas 409 S. Pomelo Avenue is the building on the west side of the property, situated perpendicular to 407 S. POMELO AVENUE, and at the western most point of the driveway of the property.

iii. Below is a screenshot photograph from the online geographic imaging service Google Maps, depicting the northern side of the Pomelo apartment building.



       b.    **763 FAIRVIEW AVENUE:**  A two-story, three bedroom, beige condominium/townhouse, with blue trim, that is part of a multiunit residential building, containing multiple adjoined apartment units ("Fairview apartment building").  The Fairview apartment building is located on the north side of Fairview Avenue and faces north to south.  The individual units comprising the Fairview apartment building are accessible via is a metal gate located on the western side of building.  This gate leads to an exterior walkway running north to south along the western side of the building. Each unit in the apartment building, including 763 FAIRVIEW AVENUE, has its own westward-facing exterior entrance abutting the walkway running along the western side of the Fairview apartment building.  The parking area for the Fairview apartment building is located on the eastern side of the building.  A communal driveway, located on the eastern side of the building, slopes downward into a parking area.  Each unit within the Fairview apartment building possesses its own individual covered garage with a tan garage door located directly beneath the first floor of the respective units.  Based on my observation of vehicle traffic going in and out of the building, I believe that each unit in the Fairview apartment building may be accessed via a secondary door located in the garage of the respective units.  The subject location is the southernmost unit in the Fairview apartment building.  Accordingly, 763 FAIRVIEW AVENUE is the first unit on the left upon entering the Fairview apartment building's driveway, and the first unit on the right upon entering the Fairview apartment building's gated pedestrian entrance.

        i.   Below is a screenshot photograph taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building and its parking area, looking northward:



        ii.   Below is a screenshot photograph taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building, specifically Unit A, marked with a red arrow, looking northwestward:



iii. Below is a screenshot photographs taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building and its gated pedestrian entrance, looking northward:



c.   **5324 TYLER AVENUE:**   A one-story home, made of redbrick and beige wood paneling, and has a black shingle roof. 5324 TYLER AVENUE is located on the eastern side of Tyler Avenue and faces east to west.  A walkway leads directly from the sidewalk on Tyler Avenue to a small unenclosed porch area located on the northwest corner of the house. The reddish front door of the subject location is located on the southern side of the porch area, facing perpendicular to the street. 5324 TYLER AVENUE also has an attached enclosed storage area on the northern side of the building, accessible via a door on the western face of the building.  The property includes a detached two car garage located to the east of the main residence.  The detached garage may be accessed via a rollup garage door on the east side of the building. The garage for 5324 TYLER AVENUE does not have a driveway.  Instead, a communal alleyway runs between the houses on the eastern side of Tyler Avenue and the western side of Marshburn Avenue between the cross streets of Daines Drive to the north and Freer Street to the south.  This shared alleyway may be accessed via an entrance on the south side of Daines Drive or via a second entranceway on the southern side 5324 TYLER AVENUE.

i.   Below are screenshot photographs, taken from the Google Maps online geographic imaging system, showing the eastern side of 5324 TYLER AVENUE.  The door to the enclosed storage area is visible on the left-hand side of the property and is demarcated with a red arrow in each photograph.  Directly to the right of this door is the unenclosed front porch area of the property. The reddish front door of 5324 TYLER AVENUE is demarcated with a green arrow on each photograph. On the right-hand side of the home is the

entranceway to the alley running between the houses on the western side of Tyler Avenue and the eastern side of Marshburn Avenue between the cross streets of Daines Drive to the north and Freer Street to the south.







    ii. This is an satellite view of 5324 TYLER AVENUE, taken from the Google Maps online geographic imaging system, with the main house circled in red, and the detached garage circled in green.



7.     **SUBJECT VEHICLE #1:** A 2014 Dark Grey Honda Odyssey, California license plate 7FVF844, VIN 5FNRL5H60EB128378, registered in the name of Great Pacific Coast Corporation, 120 S. Pico Avenue, Long Beach, California("SUBJECT VEHICLE 1").

8.     **SUBJECT VEHICLE #2:** A 2006 White Toyota Sienna, California license plate GWZ8888, VIN 5TDZA22C56S506307, registered in the name of WENZHU GUO, 6132 Hart Avenue, Temple City, California 91780 ("SUBJECT VEHICLE 2").

IV. **SUMMARY OF PROBABLE CAUSE**

9.     I am assigned to a criminal investigation of possible violations of Title 18, United States Code, Sections 371 (conspiracy to defraud the United States), 545 (smuggling of goods into the United States), and 2342(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes), and Title 26, United States Code, Sections 5762(a)(1) (engaging in the unlawful importation of tobacco products), 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond) occurring: 1) at a customs bonded warehouse operated by Marine Wholesale and Warehouse Co. ("Marine Wholesale"), 727 West Capitol Drive, San Pedro, CA (the "Marine Wholesale Warehouse") and 2) a Foreign Trade Zone operated by a related entity, Howard Hartry, Inc., 220 North Fries Avenue, Wilmington, CA ("the Hartry FTZ"). Based on my review of memorandums of interviews conducted by the TTB investigators in October 2015, as well as speaking with said TTB

13

Investigators, I know that Howard Hartry Inc. and Marine Wholesale are related entities owned by one or more of the same individuals.

10.   My investigation is focused on the illegal removal of duty-free tobacco products from the Marine Wholesale Warehouse and the Hartry FTZ and the diversion of these tobacco products into United States' commerce, without the payment of federal excise tax.

11.   Based on the facts set forth herein, and my experience and expertise, I find there is probable cause to believe the following:

a.   By a search of public records, DAVID LU is the owner and operator of Great Pacific Coast Corporation, aka Great Pacific Corporation ("Great Pacific"), a company engaged in providing ship chandler (*i.e.*, supplying) services to cargo ships in the ports of Long Beach and Los Angeles.  As part of this business, DAVID LU provides duty-free alcohol and tobacco products purchased from Marine Wholesale to cargo ships in port.  Duty-free alcohol and cigarettes are not subject to federal and state excise taxes, as these cigarettes are meant for consumption outside of the United States.

b.   Based on my investigation, since at least April 11, 2016, DAVID LU, and others associated with him that I believe to be operating at his direction, have been engaged in the illegal diversion of duty-free cigarettes into United States' commerce, without the payment of federal excise taxes.  Based on my investigation, I believe that DAVID LU and his associates have been purchasing duty-free cigarettes from Marine Wholesale under the

14

pretext that his company, Great Pacific, will supply the duty-free cigarettes to ships in port for consumption outside of the United States, when in fact, the duty-free cigarettes are diverted and sold in the United States by DAVID LU and his associates.

c.   The SUBJECT LOCATIONS are used by DAVID LU and his associates to store duty-free cigarettes diverted into United States commerce.  Further, the SUBJECT VEHICLES are used by DAVID LU and his associates to transport the duty-free cigarettes from Marine Wholesale to the SUBJECT LOCATIONS, and elsewhere.

## V.   STATEMENT OF PROBABLE CAUSE

A.   Background

12.  On September 3, 2015, I was contacted by Investigator Nathaniel Booth ("Investigator Booth"), with the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), regarding a potential investigation of the diversion of duty-free cigarettes from the Marine Wholesale Warehouse.

a.   TTB Investigator Booth explained to me that Marine Wholesale is a TTB-permitted tobacco wholesaler with a customs bonded warehouse that sells duty-free cigarettes and alcohol to ship chandlers, who in turn, supply cargo ships in the ports of Los Angeles and Long Beach.

b.   Pursuant to 19 U.S.C. § 1555, a "customs bonded warehouse" is a building or other secured area in which imported dutiable merchandise may be stored, manipulated, or undergo manufacturing operations without payment of duty for up to 5 years from the date of importation. Under 26 U.S.C. Sections 5712 and

5713, in order to legally import cigarettes into the United States,
an individual must obtain a permit from the TTB before commencing
business as an importer of tobacco products or processed tobacco
products.

      c.   From my knowledge, experience, and conversations with
TTB Investigator Booth, I know that duty-free tobacco products are
tobacco products on which no duties or federal excise taxes have
been imposed, and that the duty-free products may only be sold for
consumption outside of the United States of America.

      d.   From my knowledge and experience, I know that
criminals engaged in the diversion of duty-free tobacco products
will frequently attempt to remove duty-free tobacco products from
customs bonded warehouses under the pretense that said products are
to be exported, only to redirect the diverted tobacco products into
United States' commerce.

      e.   Based on my own training and experience, I know that
cigarettes are typically sold at the wholesale level by the case.  A
case of cigarettes is typically referred to as a "master case" and
generally contains either 30, 50, or 60 cartons of cigarettes.
These three different types of master cases typically bear the
demarcations 6M, 10M, and 12M on the outside of the case,
respectively.  A carton contains 10 packs of cigarettes.  A pack
contains 20 sticks.  Therefore, a 6M master case of cigarettes will
contain 6,000 cigarette sticks, a 10M master case will contain
10,000 cigarette sticks, and a 12M master case will contain 12,000
cigarette sticks.

    13.   Pursuant to my investigation, I have reviewed sales
invoices and customs paperwork prepared and maintained by Marine

Wholesale regarding their sale of duty-free cigarettes.  Based on my
review of these records, the following brands of cigarettes were
sold by Marine Wholesale during the 2016 calendar year, and January
and February of 2017: 1) Marlboro, Parliament, and L&M brand
cigarettes, manufactured by Altria, Inc. ("Altria"); 2) Davidoff and
Yuxi brand cigarettes, imported by Imperial Tobacco, Inc.
("Imperial"); and 3) Mevius and Seven Star brand cigarettes,
imported by Japan Tobacco International ("JTI").  Based on my
experience, during this time period, Altria brand cigarettes were
typically sold in 6M (30 carton) master cases, while Imperial and
JTI brand cigarettes were typically sold in 10M (50 carton) master
cases.

> B.   Identification of DAVID LU

14.   On October 5, 2015, TTB Investigator Booth and TTB Special
Operations Investigator (SOI) James Ebert ("SOI Ebert") interviewed
Marine Wholesale employee Jerry Anderson ("Anderson").  TTB
Investigator Booth subsequently prepared a memorandum of activity
based on this interview, a copy of which was provided to me for my
review.  Based on my review of this memorandum and my conversations
with TTB Investigator Booth, I state as follows:

> a.   During the interview, Anderson stated that he was the
Vice-President of Marine Wholesale and had held this position for
twenty years.  Anderson described Marine Wholesale as the exclusive
wholesaler and exporter for duty-free tobacco products and alcohol
for all vessels coming into the Los Angeles and Long Beach ports.

> b.   Anderson stated that Marine Wholesale sells duty-free
cigarettes and alcohol to ship chandlers, who in turn, supply ships
within the ports.  Anderson stated that after the ship chandlers

17

receive the duty-free alcohol and tobacco products, they are required to take the product directly to the ship that had placed the subject order and fulfill the order.

    c.  Anderson provided TTB Investigator Booth with the names of various ship chandlers who buy duty-free alcohol and tobacco products from Marine Wholesale. One of the ship chandlers identified by Anderson was an entity known as Pat's Ship Supply.

    C.  Interviews with Patricia Pettit & DAVID LU

    15.  On October 6, 2015, TTB Investigator Carlos Marroquin ("Investigator Marroquin") conducted an interview with Patricia Pettit ("Pettit"), the owner of Pat's Ship Supply, at her office at the International Seafarers Center, located at 120 Pico Avenue, Long Beach, CA ("International Seafarers Center"). I have reviewed the memorandum of interview prepared by TTB Investigator Marroquin of this interview, and state as follows:

    a.  Pettit stated that she had operated Pat's Ship Supply for several years, but that she, had drastically cut back her involvement in the business in recent years. Pettit stated that the business operations of Pat's Ship Supply had largely been taken over by DAVID LU, with her permission.

    b.  Pettit stated that DAVID LU used her business' name, Pat's Ship Supply, to supply ships in port with electronics, water, food, alcohol, and tobacco. Pettit stated that DAVID LU operated under her company's name in order to use the company's bonded carrier permit issued by CBP to purchase duty-free product.

    c.  Pettit stated that DAVID LU also had his own company known as "Great Pacific Corporation," which specialized in electronic sales.

18

16.  On October 7, 2015, TTB Investigator Marroquin conducted
an interview of DAVID LU at his office in the International
Seafarers Center.  I have reviewed the memorandum of interview
prepared by TTB Marroquin based on this interview.  Based on my
review of this memorandum, I state as follows:

a.  During the interview, DAVID LU stated that in 2003,
he started a business supplying electronics to ships in the Port of
Long Beach.  In approximately 2010, DAVID LU moved his operation
into an office at the International Seafarers Center.  DAVID LU
stated that after moving into the International Seafarers Center, he
was approached by Pettit about combining their operations in order
to provide electronics, food, alcohol, and cigarettes to ships in
port.

b.  DAVID LU stated that after combining operations with
Pat's Ship Supply, Pettit introduced him to representatives of
Marine Wholesale.  DAVID LU stated that he bought cigarettes from
Marine Wholesale using Pat's Ship Supply as the listed purchaser
because, in 2013, he had gotten into a dispute with Marine Wholesale
regarding the payment of an invoice.

c.  DAVID LU stated that on October 2, 2015, he had
"bonded" Great Pacific with the U.S. Customs and Border Protection,
and therefore, he was now purchasing duty-free cigarettes directly
from Marine Wholesale under Great Pacific, and picking up the
cigarettes directly from the Marine Wholesale Warehouse.  DAVID LU
stated that, prior to obtaining the bond, he would have a
representative of Marine Wholesale deliver the duty-free cigarettes
to the port, and would then meet the Marine Wholesale employee at
the designated cargo ship that had placed the order for duty-free

19

cigarettes. DAVID LU stated that he would thereafter deliver the duty-free cigarettes to the cargo ship and collect payment from the captain.

       d.   When asked whether he had made any recent cargo ship deliveries of duty-free cigarettes, DAVID LU stated that he had recently made a delivery to the MV Jervis Bay, and that the paperwork for the sale was at in his home, a SUBJECT LOCATION, 763 FAIRVIEW AVENUE.  DAVID LU was then escorted to 763 FAIRVIEW AVENUE, where he provided TTB Investigator Marroquin with customs documents and invoices that showed how Great Pacific sold duty-free cigarettes and other products to the MV Jervis Bay.  According to TTB Investigator Marroquin, the customs documents and invoices were stamped and signed by the Ship Master of the MV Jervis Bay.

       e.   During the interview, DAVID LU stated that he leased a storage locker, and offered to show the contents to TTB Investigator Marroquin.  TTB Investigator Marroquin followed DAVID LU to a storage facility in Arcadia, where DAVID LU opened the storage unit for TTB Investigator Marroquin, who confirmed that DAVID LU did not have any duty-free cigarettes in the storage unit.

       f.   At the conclusion of the interview, DAVID LU stated that he understood the purpose of the TTB's investigation, and claimed that he always made sure that the duty-free cigarettes he sold were delivered to the proper cargo ships.

    D.   Identification of WENZHU GUO

17.  On October 7, 2015, TTB Investigator Stevens and TTB SOI Adam Krautheim ("SOI Krautheim") interviewed Marine Wholesale employee Dawn Fitler ("Fitler") regarding her knowledge of the operations of Marine Wholesale.  I have reviewed the memorandum of

interview prepared by TTB Investigator Stevens shortly thereafter, and state as follows:

      a.  During the interview, Fitler stated that, between 2012 and 2013, a company named "Royal Marine" was the largest purchaser of duty-free cigarettes from Marine Wholesale.  Fitler described the owner of Royal Marine as a man named "Bill."  Fitler stated that Royal Marine ceased doing business with Marine Wholesale after duty-free product purchased by Royal Marine was "found" in Los Angeles.

    18.  I reviewed contact information provided by Marine Wholesale that it maintained regarding its ship chandler clients.

      a.  According to Marine Wholesale's records, Royal Marine's address is 333 W. Garvey Avenue, Ste. B481, Monterey Park, CA, and its point of contact is Bill Deng.

      b.  According to Marine Wholesale's records, the same contact information was also provided for a company named "AE Marine Supply Corporation" ("AE Marine").

    19.  On October 9, 2015, TTB SOIs Ebert and Krautheim conducted a follow up interview of Anderson, the vice-president of Marine Wholesale.  I reviewed the memorandum of interview prepared shortly thereafter, and state as follows:

      a.  Anderson stated that AE Marine and Royal Marine were both run by an individual named "Bill Deng."  Anderson stated that Bill Deng ceased doing business with Marine Wholesale after duty-free cigarettes he had purchased from Marine Wholesale were found in the domestic market during a "raid" conducted by law enforcement.

    20.  Online records that I obtained from the California Secretary of State indicate that the agent for service of process

21

for Royal Marine is WENZHU GUO, and the company's address is 333 Garvey Avenue, Ste. B481, Monterey Park, CA 91745 ("333 Garvey Avenue").

21.   On February 18, 2017, I traveled to 333 Garvey Avenue with IRS-CI Special Agent Deborah White ("IRS-CI SA White").

a.   333 Garvey Avenue is a storefront for ASAP Postal, a business offering post office box rental services.

b.   After entering the location, I served the store manager, Lisa Yeung ("Yeung"), with a subpoena for records related to P.O. Box B481, who told me that the box was previously rented by WENZHU GUO.

c.   Yeung stated that WENZHU GUO frequently mailed packages of cigarettes from ASAP Postal.

d.   Yeung stated that the contract for P.O. Box B481 was terminated on December 30, 2014.  Based on my review of Marine Wholesale sales records, WENZHU GUO closed P.O. Box B481 approximately three months after AE Marine ceased purchasing cigarettes form Marine Wholesale.

E.   Surveillance on April 6, 2016

22.   On April 6, 2016, Alcohol Tobacco and Firearms (ATF) Special Agent Quan Vuong ("ATF SA Vuong"), TTB Investigators Booth, Michael Stevens and Brandon Cummo ("Investigator Stevens" and "Investigator Cummo") conducted surveillance of the premises of Marine Wholesale.  I have spoken with ATF SA Vuong and the TTB Investigators regarding the surveillance activities, and reviewed the memorandum of activity prepared by TTB Investigator Booth memorializing this activity.  Based on this information, I state as follows:

      a.    At approximately 3:12 p.m., TTB Investigator Booth observed a gold Toyota Camry with unknown license plates and a blue-grey Honda Odyssey mini-van ("Honda Odyssey" but ***not*** SUBJECT VEHICLE #1) arrive and park in the loading zone of the Marine Wholesale Warehouse.  TTB Investigator Booth observed a Marine Wholesale employee drive a forklift into the loading zone that was loaded with cardboard boxes of the approximate shape and size of cigarette master cases, of which he is familiar based on his experience and training. TTB Investigator Booth then observed as the master cases loaded into the Camry and the Honda Odyssey.

      b.    The surveillance team initiated vehicle surveillance and followed the Honda Odyssey to a residence located at 1520 North Garfield, San Marino, CA.  TTB Investigator Stevens observed an unidentified Asian female exit the Honda Odyssey and open the rear hatch.  TTB Investigator Stevens was able to see several cardboard boxes of the approximate shape and size of cigarette master cases inside the vehicle, similar to those that had been loaded at the Marine Wholesale Warehouse, and that several of these cases were labelled "Davidoff."

      c.    At approximately 7:23 p.m., the surveillance team observed the unidentified Asian female re-enter the Honda Odyssey and depart the residence, and vehicle surveillance continued.  At approximately 8:05 p.m., the Honda Odyssey arrived at a liquor store located at 1018 South San Gabriel Boulevard, San Gabriel, CA.  TTB Investigator Booth observed the Honda Odyssey back up to an alley adjacent to the liquor store, next to a van.  TTB Investigator Booth entered the liquor store and observed that no one was present in the storefront area.  After calling for assistance, TTB Investigator

Booth entered the back room of the liquor store, where he saw that the back door was open, leading out into the parking lot behind the store.  TTB Investigator Booth saw that the rear hatch of the van was open, and based on his experience and training, he identified that several cases of the shape and size of cigarette master cases were in the back of the van and labelled "Davidoff."  TTB Investigator Booth saw that the unidentified Asian female was speaking with what turned out to be the clerk of the liquor store. TTB Investigator Booth feigned as if he were a customer, and requested the clerk come to the front to assist him.

d.   At approximately 8:25 p.m., the Honda Odyssey departed the liquor store and the surveillance team continued vehicle surveillance.  At approximately 9:03 p.m., investigators observed the Honda Odyssey pull into a residence at 779 Coral Tree Way, Upland, California and enter its garage.

23.  I searched the records of the California Department of Vehicles and found revealed that the Honda Odyssey is registered in the name of "Bin Yuan" and DAVID LU at 763 FAIRVIEW AVENUE.  I performed a search of the California DMV database for information regarding Bin Yuan, and found her address as 763 FAIRVIEW AVENUE.  A public records search I performed for Bin Yuan reveals that she may also use the name "Christine Bin."

24.  I obtained and reviewed sales invoices from Marine Wholesale for all sales made to Great Pacific for April 6, 2016. Based on my review of the Marine Wholesale sales records, Great Pacific purchased a total of 28 master cases of cigarettes, containing 1,280 cartons, on April 6, 2016.  This order was comprised of 120 cartons of Marlboro brand cigarettes, 60 cartons of

Parliament brand cigarettes, 100 cartons of Yuxi brand Cigarettes,
250 cartons of Seven Star brand Cigarettes, 250 cartons Mevius brand
Cigarettes, and 500 cartons of Davidoff brand cigarettes, and was to
be delivered to the APL Mexico City, a cargo ship. The invoices and
customs paperwork maintained by Marine Wholesale related to this
sale reflects that the subject cigarettes were delivered to the APL
Mexico City on April 6, 2016, and signed for by an officer of the
ship.   Affixed to the paperwork is a stamp appearing to be an
official vessel stamp of the APL Mexico City.

25.   Based on the events observed by the surveillance team
described in paragraph twenty-two above, I conclude there is
probable cause to believe that DAVID LU and others working pursuant
to his direction diverted a portion of the cigarettes purchased by
Great Pacific on April 6, 2016 into United States' commerce by
selling a portion of the cigarettes to a purchaser in the United
States.   Great Pacific and DAVID LU appear to have obtained vessel
stamps acknowledging the APL Mexico's receipt of the entirety of the
subject order, even though a large portion of this order appears to
have been diverted.

F.   Identification of 5324 TYLER AVENUE

26.   On August 4, 2016, I conducted a search of various
government indices for information regarding potential addresses
associated with DAVID LU.   This search revealed a potential address
for DAVID LU located at 5324 TYLER AVENUE.

27.   At approximately 9:00 a.m. on August 5, 2016, I drove to
5324 TYLER AVENUE, and while conducting surveillance, I saw a Black
Cadillac Escalade, California license plate # 7LMZ135, parked in
front of 5324 TYLER AVENUE.

a.    Later, I searched the California DMV database and found that the vehicle is registered to "Yong Lu" and "Lu Chen" at 763 FAIRVIEW AVENUE.

b.    Then, I searched the California DMV database for information regarding "Lu Chen" at 763 FAIRVIEW AVENUE, and obtained a driver's license photograph of "Lu Chen" with this address.

c.    I compared the California DMV photograph of "Lu Chen" to photographs taken by TTB Investigator Stevens during the surveillance conducted on April 6, 2016 as described in paragraph 23, above, and based on my observation, I believe "Lu Chen" is the Asian female that was observed driving the Honda Odyssey during the aforementioned surveillance conducted on April 6, 2016.

G.    Surveillance on August 16, 2016

28.    On August 16, 2016, TTB Investigator Stevens performed surveillance of 763 FAIRVIEW AVENUE.  I have spoken with TTB Investigator Stevens regarding his observations and reviewed photos taken by TTB Investigator Stevens while surveilling, as well as a memorandum of his surveillance that he prepared shortly thereafter, and state as follows:

a.    As previously described, 763 FAIRVIEW AVENUE is a townhome/condominium connected to several other units.  The townhomes use a shared driveway and each unit has its own garage.

b.    During his surveillance of the property, TTB Investigator Stevens saw two Honda Odyssey's—first, the Honda Odyssey that had been previously surveilled as described in paragraphs 22 and 23, above, and second, SUBJECT VEHICLE 1, parked in the driveway of 763 FAIRVIEW AVENUE.

26

c.    I performed a search of the California Department of Motor Vehicles database and found that SUBJECT VEHICLE 1 is registered to DAVID LU's company, Great Pacific.

H.    Purchases Observed on Pole Camera, Marine Wholesale and Cargo Ship Records

29.    On September 22, 2016, at the request of HSI, the Los Angeles Sheriff Department ("LASD") installed a non-intrusive street monitoring pole camera outside the parking/loading zone of Marine Wholesale Warehouse ("Pole Camera"), which monitored and recorded plain sight activity at this location.  At the request of HSI, LASD removed and deactivated the Pole Camera on February 14, 2017.  All camera data and footage is currently stored in a secure encrypted padlock drive.  Unless otherwise noted, any reference to footage taken from the Pole Camera is based on my review of the underlying footage.

a.    I watched the footage from the Pole Camera recorded on February 9, 2017, and at 10:49 a.m., I can see the Honda Odyssey park near the entrance of the Marine Wholesale Warehouse.

b.    At 11:05 a.m., I saw the Honda Odyssey enter the loading zone of the Marine Wholesale Warehouse. After approximately 20 minutes, I saw a Marine Wholesale employee drive a forklift into the loading zone carrying cardboard boxes matching the general shape and size of cigarette master cases of which I am familiar based on my training and experience. Then, I saw two unidentified Asian females exit the Honda Odyssey and begin to load the master cases into the trunk.  The two unidentified Asian females then got back in the Honda Odyssey and left the premises at approximately 11:30 a.m.

27

c.    I continued to watch the Pole Camera footage for this day when, at 3:36 p.m., I saw one of the unidentified Asian females from the morning return to Marine Wholesale, this time driving SUBJECT VEHICLE 1.  The unidentified female was met by an employee of Marine Wholesale driving a forklift that carried cardboard boxes matching the general shape and size of cigarette master cases, of which I am familiar.  I saw the master cases loaded into SUBJECT VEHICLE 1 departed the loading zone of Marine Wholesale.

30.  I reviewed sales records from Marine Wholesale for February 9, 2017, that record that Great Pacific purchased duty-free cigarettes from Marine Wholesale for delivery to two cargo ships in port, the APL New York and the MV Navarino.

a.    According to Marine Wholesale's records, Great Pacific purchased 29 master cases of cigarettes (containing 1,330 cartons) for the APL New York, which was comprised of 180 cartons of Marlboro-brand cigarettes, 400 cartons of Davidoff-brand cigarettes, and 750 cartons of Mevius-brand cigarettes.

b.    According to Marine Wholesale's records, Great Pacific purchased 31 master cases (containing 1,410 cartons) for the MV Navarino, which was comprised of 100 cartons of Yuxi-brand cigarettes, 400 cartons of Davidoff-brand cigarettes, 700 cartons of Mevius-brand cigarettes, and 210 cartons of Marlboro-brand cigarettes.

c.    On June 24, 2017, HSI Special Agents David Keller ("SA Keller") and Carlo Romero (SA Romero") boarded the APL New York when it was docked in the port of Oakland, CA, and interviewed Ang Lang ("Lang"), the captain.  I reviewed the memorandum prepared by

SA Keller regarding this interview shortly thereafter, and state as follows:

       i.   During the interview, Lang stated that was the captain of the APL New York for the past seven months (which tenure would include February 9, 2017).

       ii.  Lang stated that when docked in the port of Los Angeles, the APL New York only purchased duty-free cigarettes from Harbor Ship Supply or West Coast Ship Supply.

       iii. Lang stated that the ship had never purchased duty-free cigarettes from Great Pacific.

       iv.  When asked whether crew members could make independent duty-free cigarettes purchases while in port, Lang stated that the crew of the vessel was not permitted to do so.

    I.   <u>Surveillance on May 9, 2017</u>

    31.  On May 9, 2017, I performed surveillance of 407 S. POMELO AVENUE, with ATF SA Vuong, and TTB Investigators Booth, Stevens, Cummo, Richard Nones ("Investigator Nones"), and Jacob Goodman ("Investigator Goodman"). Pursuant to the investigation, 407 S. POMELO AVENUE was identified as a surveillance target after I searched public records and found it was a potential address for WENZHU GUO. Based on my personal observations and my conversations with other members of the surveillance team, I state as follows:

       a.   At approximately 12:15 p.m., ATF SA Vuong witnessed a dark blue Toyota Camry ("Camry"), California license plate number WZG8888, exit the gate of the Pomelo apartment building and leave. I performed a search of the California DMV database and found that the Camry is registered to WENZHU GUO.

b.   At 12:50 p.m., the surveillance team subsequently observed the Camry return to the Pomelo apartment building.

c.   At 1:15 p.m., the surveillance team observed SUBJECT VEHICLE 2 enter the parking lot of the Pomelo apartment building, and then at 1:50 p.m., leave the parking lot of the Pomelo apartment building.

J.   GPS Tracker for SUBJECT VEHICLE 1/Surveillance

32.   On August 4, 2017, the Honorable Alexander F. MacKinnon, United States Magistrate Judge, Central District of California, signed a warrant in Case No. 17-MJ-01972, and authorized the installation and use of a GPS tracking device on SUBJECT VEHICLE 1.[1] On August 8, 2017, I installed a GPS tracking device on SUBJECT VEHICLE 1 ("the GPS Tracker").

33.   On August 28, 2017, I received information from the GPS Tracker indicating that SUBJECT VEHICLE 1 was heading in the direction of the Marine Wholesale Warehouse.  Utilizing the information from the GPS Tracker, I began surveillance of the SUBJECT VEHICLE 1 with IRS-CI SA White, TTB Investigators Goodman, and Nones. While monitoring the GPS Tracker on a government computer, and communicating with the other members of the surveillance team, I observed the following:

a.   At approximately 3:24 p.m., SUBJECT VEHICLE 1 arrived at the Marine Wholesale Warehouse, but departed at 3:26 p.m..

---

[1] The same day, the Honorable Alexander F. Mackinnon, United States Magistrate Judge, also signed a warrant in Case No. 17-MJ-01974, authorizing the installation and use of a tracking device on the Honda Odyssey, which I installed on August 8, 2017. No information relevant to this affidavit was obtained through the use of this tracking device.  Accordingly, any reference to "the GPS tracker" refers to the tracking device installed on SUBJECT VEHICLE 1 only.

b.    At 3:32 p.m., SUBJECT VEHICLE 1 arrived at a warehouse located at the Hartry FTZ (see paragraph 9, above).

c.    At approximately 3:46 p.m., SUBJECT VEHICLE 1 departed the Hartry FTZ.

d.    At 4:07 p.m., SUBJECT VEHICLE 1 stopped at an open public parking lot near 555 North Pico Avenue, Long Beach, CA.

e.    At 4:26 p.m., SUBJECT VEHICLE 1 departed the parking lot, and began traveling north on Interstate 710.

f.    At 5:19 p.m., SUBJECT VEHICLE 1 arrived at 407 S. POMELO AVENUE, where IRS-CI SA White was stationed outside.  IRS-CI SA White told me that at 5:19 p.m., she observed SUBJECT VEHICLE 1 arrive enter the Pomelo apartment building's car park area, but was unable to view SUBJECT VEHICLE 1 thereafter.

g.    At 5:37 p.m., IRS-CI SA White observed SUBJECT VEHICLE 1 leave the Pomelo apartment building and drive north.

h.    At approximately 6:02 p.m., using the information from the GPS Tracker on a government computer, I saw that SUBJECT VEHICLE 1 drove to 763 FAIRVIEW AVENUE, where TTB Investigator Goodman was stationed outside.  TTB Investigator Goodman has informed me that at approximately 6:02 p.m., he saw SUBJECT VEHICLE 1 enter the car park area of the Fairview apartment building and park.  TTB Investigator Nones saw an unidentified Asian male exit SUBJECT VEHICLE 1, and observed that activity in the back of the SUBJECT VEHICLE 1 was occurring, but could not identify what activity was occurring.

34.  I reviewed the Automated Targeting System (ATS) Customs transaction database, which is a database maintained by the Department of Homeland Security (DHS) U.S. Customs and Border

Protection (CBP), for records of any transfers of cigarettes from the Hartry FTZ to Great Pacific, DAVID LU's business, on August 28, 2017.

a.     These records indicate that on August 28, 2017, the Hartry FTZ transferred 28 master cases of duty-free cigarettes, or approximately 1,400 cartons, to Great Pacific for delivery to the MV Kota Cantik, a cargo vessel berthed in the Port of Los Angeles.

b.     Based on my review of the information transmitted by the GPS Tracker as described in paragraph 33, above, and my own observations and that of the surveillance team, on August 28, 2017, SUBJECT VEHICLE 1 travelled to the Marine Wholesale Warehouse and the Hartry FTZ, but never entered the Port of Los Angeles, where the MV Kota Cantik was berthed.

K.     Surveillance on September 7, 2017

35.     On September 7, 2017, I received information from the GPS Tracker indicating that SUBJECT VEHICLE 1 was heading westward from Arcadia, CA., and as such, I began surveillance with ATF SA Vuong, TTB Investigators Goodman and Cummo. While monitoring the GPS Tracker on a government computer, and communicating with the other members of the surveillance team, I observed the following:

a.     At approximately 3:00 p.m., I observed SUBJECT VEHICLE 1 enter the parking lot of the Marine Wholesale Warehouse, and saw an unidentified Asian male exit the driver side of SUBJECT VEHICLE 1 and enter the warehouse. Then, I saw the unidentified Asian male leave the Marine Wholesale Warehouse rolling a hand truck with 4 to 5 white boxes.  The unidentified Asian male loaded the boxes into the SUBJECT VEHICLE 1 and departed the Marine Wholesale

Warehouse at approximately 3:06 p.m., heading eastward, toward the Harty FTZ, where it arrived at 3:15 p.m.

b.   I followed SUBJECT VEHICLE 1 to the Hartry FTZ and observed SUBJECT VEHICLE 1 with its rear hatchback door raised and backed up to one of loading docks of a warehouse in the Hartry FTZ. I was unable to observe the contents of any items loaded into the minivan.  SUBJECT VEHICLE 1 left the Hartry FTZ at approximately 3:35 p.m.

c.   At approximately 3:57 p.m., using information from the GPS Tracker, I saw that SUBJECT VEHICLE 1 arrived at the International Seafarers Center.  ATF SA Vuong traveled to the International Seafarers Center and observed SUBJECT VEHICLE 1 in the back parking lot, but did not see any activity.  At approximately 5:15 p.m., SUBJECT VEHICLE 1 departed the International Seafarers Center, and ATF SA Vuong followed.

d.   At approximately 6:15 hours, using information from the GPS Tracker, SUBJECT VEHICLE 1 arrived at Fremont Business Center, Unit #278, 901 S. Fremont Avenue, Alhambra, CA, which according to ATF SA Vuong, is an outdoor business park featuring several storefronts, each with their own individual frontage facing the parking lot.  Shortly after arriving at the Fremont Business Center, ATF SA Vuong and TTB Investigator Cummo observed SUBJECT VEHICLE 1 back up and park in front of Unit #278, where they noticed that the roll-up door of the Unit #278 was open. ATF SA Vuong observed an unidentified Asian male remove a partially opened Marlboro box that he could see contained smaller boxes from SUBJECT VEHICLE 1 and taking them inside Unit #278. At approximately 6:35 p.m., ATF SA Vuong observed WENZHU GUO arrive in SUBJECT VEHICLE 2,

where GUO backed into the parking spot next to SUBJECT VEHICLE 1.
ATF SA Vuong initiated foot surveillance and observed that the rear
hatchback door of SUBJECT VEHICLE 2 was open.  However, ATF SA Vuong
was unable to see what, if anything, was occurring between WENZHU
GUO and the unidentified Asian male, as the two had parked the
SUBJECT VEHICLES in a "V" formation that effectively blocked outside
observation.

    e.   At approximately 7:00 p.m., the SUBJECT VEHICLES
departed the location.

    f.   At approximately 7:17 p.m., SUBJECT VEHICLE 1 arrived
at 763 FAIRVIEW AVENUE.

    g.   At approximately 7:20 p.m., SUBJECT VEHICLE 1
departed 763 FAIRVIEW AVENUE.

    h.   At approximately 7:22 p.m., SUBJECT VEHICLE 1 parked
in the street near the intersection of La Cadena Avenue and Arcadia
Avenue and surveillance was terminated.

36.  I have reviewed the ATS Customs transaction database for
records of any transfers of cigarettes from the Hartry FTZ to Great
Pacific on September 7, 2017.

    a.   These records indicate that Marine Wholesale
transferred 27 master cases of duty-free cigarettes, or
approximately 1,350 cartons to Great Pacific for delivery to the MV
Navarino, a cargo ship berthed in the Port of Los Angeles.

    b.   Based on my review of the information transmitted by
the GPS Tracker as described in paragraph 35, above, and my own
observations and that of the surveillance team, on September 7,
2017, SUBJECT VEHICLE 1 travelled to the Marine Wholesale Warehouse

and the Hartry FTZ, but never entered the Port of Los Angeles, where
the MV MV Navarino was berthed.

      L.   <u>Surveillance on September 13, 2017</u>

    37.  On September 13, 2017, I received information from the GPS
Tracker indicating that SUBJECT VEHICLE 1 was heading westward from
Arcadia, CA, so surveillance of SUBJECT VEHICLE 1 began with IRS-CI
SA White, ATF SA Vuong, TTB Investigators Goodman and Cummo, and TTB
Auditor Marjorie Rucinski. While monitoring the information from the
GPS Tracker on a government computer, and communicating with the
other members of the surveillance team, I observed the following:

      a.  At approximately 4:30 p.m., SUBJECT VEHICLE 1 arrived
at the Marine Wholesale Warehouse, and departed twenty minutes
later, where it drove to the Hartry FTZ, where it stayed for five
minutes.

      b.  At approximately 3:59 p.m., SUBJECT VEHICLE 1
departed the Hartry FTZ and drove to the International Seafarers
Center, arriving at 4:09 p.m., and departing at 4:18 p.m.

      c.  At approximately 5:06 p.m., SUBJECT VEHICLE 1 arrived
at the Lincoln Plaza Hotel, 123 Lincoln Avenue, Monterey Park, CA,
where at 5:12 p.m., ATF SA Vuong arrived and observed SUBJECT
VEHICLE 1 parked in the front parking area. ATF SA Vuong exited his
vehicle and approached SUBJECT VEHICLE 1 by foot, where he saw an
Asian female who, based on his involvement in this investigation,
resembled Christine Bin sleeping in the driver's seat of SUBJECT
VEHICLE 1. ATF SA Vuong also observed unknown cargo inside the rear
of SUBJECT VEHICLE 1, but was unable to identify the cargo, as the
items were covered with a large blanket. ATF SA Vuong subsequently

observed an unidentified Asian male walk from the hotel and enter the passenger-side door of SUBJECT VEHICLE 1.

      d.   At 5:57 p.m., SUBJECT VEHICLE 1 departed the Lincoln Plaza Hotel, and at 5:58 p.m., arrived and parked in a parking lot of a shopping center, 401 East Garvey, Monterey Park, CA.

      e.   At approximately 6:20 p.m., SUBJECT VEHICLE 1 departed the shopping center.

      f.   At approximately 6:53 p.m., SUBJECT VEHICLE 1 arrived at 763 FAIRVIEW AVENUE, and shortly thereafter, TTB Investigator Cummo and Goodman arrived and observed SUBJECT VEHICLE 1 parked alongside the garage associated with 763 FAIRVIEW AVENUE, with its hatchback door open.  TTB Investigators Cummo and Goodman observed the unidentified Asian male loading/unloading items to/from SUBJECT VEHICLE 1.

      g.   Information that I obtained from the GPS Tracker affixed to SUBJECT VEHICLE 1 indicates that SUBJECT VEHICLE 1 left 763 FAIRVIEW AVENUE at approximately 8:34 p.m., and drove to the vicinity of 5324 TYLER AVENUE, where it remained for approximately five minutes before leaving and returning to the vicinity of 763 FAIRVIEW AVENUE.

   38.  I have reviewed the ATS Customs transaction database for records of any transfers of cigarettes from Marine Wholesale to Great Pacific on September 13, 2017.

      a.   These records indicate that on September 13, 2017, Marine Wholesale transferred 13 master cases of cigarettes, or approximately 650 cartons, to Great Pacific for delivery to the MV Timaru Star, a cargo vessel berthed in the Port of Los Angeles.

b.    Based on my review of the GPS information transmitted as described in paragraph 38, above, as well as my own observations and those of the surveilling team, SUBJECT VEHICLE 1 travelled to the Marine Wholesale Warehouse and the Hartry FTZ on September 13, 2017, but never entered the Port of Los Angeles, where the MV Timaru Star was berthed.

c.    On September 13, 2017, I boarded the MV Timaru Star with IRS-CI SA White and interviewed Captain Liu Youliang ("Captain Youliang").  Captain Youliang stated that the MV Timaru Star had not purchased any cigarettes or tobacco products during its most recent berthing.  Captain Youliang also stated that he had never heard of the ship chandler Great Pacific.

M.    Surveillance on September 29, 2017

39.    On September 29, 2017, I received information from the GPS Tracker indicating that SUBJECT VEHICLE 1 was heading westward from Arcadia, CA, so I began surveillance with ATF SA Vuong, TTB Investigators Goodman, Cummo, and Nones. While monitoring the information from the GPS Tracking device on a government computer, and communicating with the other members of the surveillance team, I observed the following:

a.    At approximately 2:52 p.m., SUBJECT VEHICLE 1 arrived at the Marine Wholesale Warehouse, where it stayed for approximately three minutes before driving to the Hartry FTZ at 3:01 p.m. until 3:14 p.m.

b.    Then, SUBJECT VEHICLE 1 drove to the International Seafarers Center, where it stayed for approximately 27 minutes, before heading north, to the Lincoln Plaza Hotel, where ATF SA Vuong had already began surveillance of the premises.

37

c.    At approximately 4:00 p.m., ATF SA Vuong entered the hotel and observed a small antique shop that was closed to the public, and on its front glass door written in English was a sign indicating the shop was open by appointment only.  ATF SA Vuong observed the shop was filled with Asian antiques. ATF SA Vuong further observed several business cards (all the same) affixed to the shop's glass door, with each card reading the following: "Lincoln Antique and Consignment, DAVID LU, Tel:626-353-8026, davidlu628@gmail.com, 123 Lincoln Avenue, #A, Monterey Park, California 91755, Show Room: 901 S. Fremont Avenue,#278, Alhambra, California 91803."  ATF SA Vuong left the hotel and returned to his government vehicle.

d.    At approximately 4:40 p.m., ATF SA Vuong observed SUBJECT VEHICLE 1 enter the parking structure of the Lincoln Plaza Hotel.  Approximately ten minutes later, ATF SA Vuong observed SUBJECT VEHICLE 1 exit the Lincoln Plaza Hotel and head southward on Lincoln Avenue, where it passed ATF SA Vuong's vehicle, so he could positively identify DAVID LU as the driver and sole occupant of SUBJECT VEHICLE 1.

e.    At approximately 4:52 p.m., SUBJECT VEHICLE 1 arrived at 407 S. POMELO AVENUE, where, prior to its arrival, I had stationed myself approximately two buildings north of the Pomelo apartment building and had begun surveillance of its parking structure.  I observed SUBJECT VEHICLE 1 arrive at 407 S. POMELO AVENUE and attempt to enter its parking lot through the gated vehicle entrance.  After the gate failed to open, I observed SUBJECT VEHICLE 1 reverse and head north on S. Pomelo Avenue, and park near the intersection of Newmark Avenue and S. Pomelo Avenue.

f.    At approximately 5:05 p.m., I observed WENZHU GUO's Camry (see paragraph 32) arrive at 407 S. POMELO AVENUE and open the vehicle entrance gate to the Pomelo apartment building, where I saw SUBJECT VEHICLE 1 follow GUO's Camry into the parking lot of the building. I drove by the Pomelo apartment building and observed GUO's Camry parked facing westbound about 15 feet in front of the garage closest to S. Pomelo Street and directly below 407 S. POMELO AVENUE.  I observed that the garage door of this garage unit was closed and SUBJECT VEHICLE 1 was nowhere to be seen.

g.    At approximately 5:21 p.m., I drove by 407 S. POMELO AVENUE, were I saw that the garage door was open and SUBJECT VEHICLE 1 was parked inside.

h.    At approximately 5:23 p.m., SUBJECT VEHICLE 1 departed 407 S. POMELO AVENUE and drove to 763 FAIRVIEW AVENUE. Prior to the arrival of SUBJECT VEHICLE 1, ATF SA Vuong parked his vehicle in an alley on the north side of the Fairview apartment building.

i.    At approximately 5:53 p.m., ATF SA Vuong observed SUBJECT VEHICLE 1 enter the parking lot of 463 Fairview Avenue and park adjacent to the garage directly below the unit.  ATF SA Vuong exited his vehicle, continued on foot, where he saw DAVID LU removing brown boxes from inside SUBJECT VEHICLE 1 and taking them inside the garage. ATF SA Vuong observed DAVID LU finish unloading the brown boxes at approximately 5:59 p.m.

j.    At approximately 6:06 p.m., I walked by SUBJECT VEHICLE 1 and looked inside through its driver's rear window. I observed only the driver and passenger seats were present, and no rear seats were visible. I observed no master cases or boxes of

39

cigarettes to be present. I also observed a thick blanket laid in the rear of the vehicle behind the passenger seat.

40. I have reviewed the ATS Customs transaction database for records of any transfers of cigarettes from the Hartry FTZ to Great Pacific on September 29, 2017.

a. These records indicate that on September 29, 2017, the Hartry FTZ transferred 28 master cases of duty-free cigarettes, or approximately 1,400 cartons, to Great Pacific for delivery to the MV Kota Cahaya, a cargo vessel scheduled to be berthed in the Port of Los Angeles on September 30, 2017.

b. Based on my review of the information transmitted by the GPS Tracker, my observations and those of the surveillance team, SUBJECT VEHICLE 1 travelled to the Marine Wholesale Warehouse and the Hartry FTZ on September 29, 2017, but never entered the Port of Los Angeles where the MV Kota Cahaya was scheduled to berthed, on that day or September 30, 2017.

N. Surveillance on October 25, 2017

41. On October 25, 2017, I received information from the GPS Tracker indicating that SUBJECT VEHICLE 1 was heading westward from Arcadia, CA, so I began surveillance with ATF SA Vuong, and TTB Investigators Goodman and Cummo. While monitoring the information from the GPS Tracking device on a government computer, and communicating with the other members of the surveillance team, I observed the following:

a. At approximately 2:46 p.m., SUBJECT VEHICLE 1 arrived at the Hartry FTZ, where it stayed for approximately 15 minutes, departing at 3:01 p.m..

b.    At approximately 3:12 p.m., SUBJECT VEHICLE 1 arrived at the International Seafarers Center, where I observed DAVID LU enter the International Seafarers Center through an entrance on the southern side of the building.

c.    At approximately 3:26 p.m., SUBJECT VEHICLE 1 departed the International Seafarers Center.

d.    At approximately 4:46 p.m., SUBJECT VEHICLE 1 arrived at 763 FAIRVIEW AVENUE, where it stayed for approximately ten minutes and departed at 4:56 p.m.

e.    At approximately 5:08 p.m., SUBJECT VEHICLE 1 arrived at 5324 TYLER AVENUE, where it stayed for approximately ten minutes, departing at 5:18 p.m.

f.    At approximately 5:20 p.m., SUBJECT VEHICLE 1 entered the parking lot of a Sam's Club, 4901 Santa Anita Avenue, El Monte, CA.  At approximately 5:22 p.m., ATF SA Vuong entered the parking lot and walked by SUBJECT VEHICLE 1, where he saw that no master cases of cigarettes were present in the back of SUBJECT VEHICLE 1.

42.  I have reviewed the ATS Customs transaction database for records of any transfers of cigarettes from Marine Wholesale to Great Pacific on October 25, 2017.

a.    These records indicate that on October 25, 2017, the Hartry FTZ transferred 29 master cases of cigarettes, or approximately 1,450 cartons, to Great Pacific for delivery to the MV APL New York (7 master cases) and the MV APL Sentosa (22 master cases), two cargo vessels berthed in the Port of Los Angeles.

b.    Based on my review of the information transmitted by the GPS Tracker, my observations, and those of the surveillance team, the SUBJECT VEHICLE travelled to the Hartry FTZ on October 25,

41

2017, but never entered the Port of Los Angeles, where the subject cargo ships were berthed.

c.   On October 26, 2017, accompanied by CBP Officer Wayne Hooper, I boarded the MV APL New York and MV APL Sentosa and interviewed the captains of both vessels.  During the interviews, both captains stated to me that their ships had not purchased any cigarettes or tobacco products from Great Pacific and neither captain had ever heard of Great Pacific.

O.   Surveillance of 407 S. POMELO AVENUE

43.   On November 30, 2017, I conducted surveillance of 407 S. POMELO AVENUE with ATF SA Vuong and TTB Investigators Goodman and Nones.  Based on my observations, and those communicated to me by the surveillance team, as well as reviewing a memorandum of activity of the activity that occurred on this date written shortly thereafter, I state the following:

a.   At approximately 12:10 pm, ATF SA Vuong observed WENZHU GUO leave 407 S. POMELO AVENUE in SUBJECT VEHICLE 2 and travel to an alley behind a business located at 243 East Garvey Avenue in Monterey Park, CA.

b.   At approximately 1:30 p.m., WENZHU GUO was met by an unidentified Asian female driving a Audi Q5 SUV with license plate number 7LJN306 ("the Audi").  When both vehicles were parked in the alley, ATF SA Vuong observed GUO exit his vehicle and place six cardboard boxes in the Audi.  ATF SA Vuong has informed me that these boxes were of the approximate shape and size of a master case of cigarettes of which he is familiar based on his experience and training.  The Audi was followed by the surveillance team, which

42

left the alley and travelled to a storefront located at 105 North Lincoln Avenue, Monterey Park, CA.

44.   At 4:15 p.m., I observed the unidentified Asian female exit the business located at 105 North Lincoln Avenue, enter the Audi, travel to a USPS post office located in San Gabriel, CA, and then a residence located at 6226 Avon Avenue in San Gabriel, CA.   I observed the unidentified Asian female park the Audi in the driveway of the residence, enter the residence, and retrieve a small cart from the garage.   I observed the unidentified Asian female retrieve several cardboard boxes from the Audi, which based on my training and experience, were the approximate shape and size of a master cases of cigarettes.   I saw that at least two cardboard boxes had the logo of "Seven Star" brand cigarettes, which based on my training and experience, I know to be a brand of cigarettes manufactured by Japan Tobacco International.

P.   "Trash Run" at 5324 TYLER AVENUE

45.   On December 8, 2017, ATF SA Vuong and Mark Davis conducted a trash run at 5324 TYLER AVENUE. I have spoken to and reviewed the memorandum of activity prepared by ATF SA Vuong describing this operation, and based on this, I state as follows:

a.   At approximately 10:30 a.m., ATF SA Vuong drove into the alley behind 5324 TYLER AVENUE and observed two trash cans out for collection at the rear of the residence.   ATF SA Vuong parked his vehicle in the alley to maintain visual contact on the two trash cans.

b.   At approximately 11:00 a.m., a Burrtec Waste Industries Inc. flatbed truck arrived at the location and picked up the two aforementioned trash cans, which were then transported to

43

Burrtec Waste Industries, 1017 W. Gladstone Street, Azusa, CA.  ATF
SA Vuong and SA Davis followed the flatbed truck to Burrtec Waste
Industries where they reviewed the contents of the two trash cans,
which included an empty carton and ten empty packs of Marlboro
cigarettes, all of which bore markings indicating that the
cigarettes were duty-free cigarettes not meant for domestic sale.
The searching agents also found a pink notebook, with several pages
of numbers and various snippets of text in both English and Chinese
characters inside.

c.   On December 12, 2017, ATF SA Vuong provided the
notebook to ATF auditor Alan Truong for his review, who speaks and
reads Chinese.  ATF Auditor Truong informed ATF SA Vuong that,
amongst the various pieces of text in the notebook, one of the pages
contained the notation "current month profit 20,370; savings 9,940."

Q.   Surveillance on January 24, 2018

46.   On January 24, 2018, I received notice via the ATS Customs
Database that the Hartry FTZ planned to transfer 22 master cases of
export-only cigarettes to Great Pacific for delivery to the APL
Sentosa, a ship docked in the Port of Los Angeles.

47.   At approximately 1:00 pm on January 24, 2018, I contacted
Marine Exchange, a non-profit organization that provides information
regarding the berthing schedules of vessels within the Port of Los
Angeles and Long Beach, and requested information regarding the APL
Sentosa.  I was informed by an employee of Marine Exchange that the
APL Sentosa was docked at the Eagle Marine Services Container
Terminal at berth L302, and was schedule to depart the Port of Los
Angeles at 5:00 am the following morning.

44

48.  After speaking with the abovementioned Marine Exchange employee, I contacted ATF SA Vuong and requested that he assist me in a surveillance operation of 763 Fairview Avenue, and 407 S Pomelo Avenue.  Based on my own observations and conversations with ATF SA Vuong, I state as follows:

a.  At approximately 2:45 pm, I arrived at 763 Fairview Avenue and began stationary surveillance of the property. Approximately five minutes later, ATF SA Vuong arrived at 407 S Pomelo Avenue and began stationary surveillance.

b.  At approximately 5:00 pm, ATF SA Vuong observed SUBJECT VEHICLE #2 arrive and drop off a passenger at 407 South Pomelo Avenue.  ATF SA Vuong identified the driver as WENZHU GUO, and observed GUO make a U-turn after dropping off the passenger, then head north on 407 S Pomelo Avenue.  At approximately 5:20 pm, SA Vuong observed GUO return in SUBJECT VEHICLE #2, enter the enter the parking area for 407 S Pomelo Avenue and park outside of the garage for 407 S Pomelo.  ATF SA Vuong, did not observe GUO loading or unloading any items from SUBJECT VEHICLE #2.

c.  At approximately 5:50 pm, while stationed outside 763 Fairview Avenue, I observed SUBJECT VEHICLE #1 arrive at 763 Fairview Avenue, reverse into the driveway of the parking area for the building, and park adjacent to the garage for 763 Fairview Avenue.  I observed an Asian male open the side passenger door of the vehicle, remove several large boxes from the cargo area of the vehicle, and place the boxes into the garage. The Asian male then entered the garage and closed the garage door behind him.  Due to the low light and the distance from the SUBJECT VEHICLE, I was unable to make a positive identification of the driver.

45

49.  On January 25, 2018, at approximately 11:30 am, HSI SA
Keith LaBranche and I met with Eagle Marine Service Security
Director William Walker at 614 Terminal Way, Los Angeles,
California.  Based on my knowledge and experience, I know that the
Eagle Marine Container Services Terminal maintains a log of any
individuals who visit the port. Upon my request, Walker provided me
with the sign in logs for the Eagle Marine Container Services
Terminal for the previous 24 hour period.  Upon review of the
abovementioned documents, I noted that an individual named Tao Zhang
had signed into the terminal to visit the APL Sentosa on behalf of
Great Pacific.  The terminal access log showed that Zhang had been
driving a silver Toyota Camry with the license plate 5ETG535

50.  At the time I received the abovementioned information from
William Walker, I was already aware of Tao Zhang and her
relationship to Great Pacific.  In addition to the abovementioned
excerpt provided by William Walker, I previously obtained historical
terminal access logs for the 2016 calendar year for various
container terminals, including the Eagle Marine Container Services
Terminal, pursuant to a related investigation.  After reviewing
portions of these historical terminal access logs, I determined that
two individuals, Tao Zhang and Nan Liu, frequently visited the Port
of Los Angeles using the name Great Pacific.  I also observed that
these individuals frequently visited the same ships that were listed
in the sales records of Marine Wholesale as receiving cigarettes
from Great Pacific.

R.   Interview on February 8, 2018

51.  On February 8, 2018, I received notice via the Customs ATS
Transaction Database that approximately 28 master cases of

46

cigarettes were scheduled to be transferred from the Hartry FTZ to Great Pacific for delivery to the MV Esplanade, a vessel docked in the Port of Los Angeles at the Eagle Marine Services Container Terminal.

52.  On February 8, 2018, I boarded the MV Esplanade and spoke with the Captain of the vessel, Moe Kyaw Aung ("Captain Aung"). When asked whether the ship had ordered any cigarettes, Captain Aung stated that no cigarettes had been purchased during the ships recent berthing in Los Angeles.  Captain Aung further stated that he was the only person on the ship allowed to purchase cigarettes, and that the crew was not permitted to make independent purchases.  Captain Aung then stated that he had never heard of Great Pacific.

53.  Prior to boarding the MV Esplanade, I obtained photographs of Nan Liu and Tao Zhang from the California DMV database.  After boarding the vessel, I provided Captain Aung with the photographs and asked whether he recognized Liu and Zhang.  Captain Aung stated that he did not recognize either individual.  However, the second mate of the MV Esplanade, Gu Xinglei, remarked that he recognized both individuals, and stated that they had both boarded the vessel the previous day.  Gu Xinglei stated that Nan Liu and Tao Zhang had attempted to sell him SIM cards, but he had turned them down. He claimed that Nan Liu and Tao Zhang had visited APL ships for years and that they had previously attempted to sell him fish oil when he was on the APL Savannah, another cargo vessel.

S.   Recent Developments

54.  Based on my review of information from the ATS Customs database, Great Pacific last purchased duty free cigarettes from the Hartry FTZ on February 8, 2018.

47

55.   On February 15, 2018, I received notice from the ATS
Customs database indicating that Desert Empire, the customs bonded
warehouse responsible for supplying cigarettes manufactured by JTI
to purchasers in California, including the Hartry FTZ, was seeking
to send approximately 300 master cases of cigarettes back to JTI's
warehouse in Jacksonville, Florida.  Based on my knowledge and
experience, I believe Desert Empire is returning the cigarettes to
JTI's warehouse because JTI no longer anticipates selling the
cigarettes to purchasers in California, including the .

56.   On February 16, 2018, I spoke with CBP Officer Wayne
Hooper (CBP Officer Hooper) regarding the recent purchase made by
the Hartry FTZ on February 8, 2018.  CBP Officer Hooper informed me
that on February 9, 2018, the Hartry FTZ had attempted to recall or
revoke the inbond bill previously submitted to CBP in relation to
the purchase of 28 master cases of cigarettes by Great Pacific on
February 8, 2018.

57.   Based on the events described in paragraphs XXX through
XXX above, I believe that Great Pacific and DAVID LU may have
recently ceased purchasing from the Hartry FTZ after becoming aware
of government scrutiny of their transactions.  Accordingly, I
believe it is imperative to search the subject properties now,
before Lu and his associates destroy relevant evidence regarding
their diversion of duty free cigarettes.

T.   Indictment and Arrest of DAVID LU and WENZHU GUO

58.   Simultaneously with the submission of this search warrant,
the government intends to submit a single count indictment to the
grand jury charging DAVID LU and WENZHU GUO each with one count of
conspiring to defraud the United States in violation of 18 U.S.C. §

48

371.  If a true bill is returned, and an arrest warrant is issued, the government intends to arrest LU and WENZHU GUO at the time this warrant is executed.

## VI. <u>ITEMS TO BE SEIZED</u>

59.  Based on the foregoing, I respectfully submit that the items to be seized are the following items, records, and documents:

See Attachment B, included as an attachment hereto.

## VII. <u>SEALING REQUEST</u>

60.  The criminal investigation of DAVID LU and WENZHU GUO as described herein is continuing. Disclosure of the contents of this affidavit would impede the continuing investigation by disclosing the nature and the scope of the government's investigation, the source of the information, and other critical details.  Premature disclosure would likely lead to the destruction of evidence, efforts to dissuade witnesses from cooperating, or other efforts to obstruct justice.  Accordingly, I request that this Court issue an order sealing this affidavit until further order of the Court.

## VIII.  <u>CONCLUSION</u>

61.  Based on the records obtained by the special agents, investigators, and myself, who are all assigned to this case, the surveillance of the SUBJECT LOCATIONS and the SUBJECT VEHICLES, and my own experience, training, and observations, as well as the experience of others, I conclude that there is probable cause that DAVID LU and WENZHU GUO have violated Title 18, United States Code, Sections 371 (conspiracy to defraud the United States), 545 (smuggling of goods into the United States), and 2342(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes), and Title 26, United States Code,

Sections 5762(a)(1) (engaging in the unlawful importation of tobacco products), 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond).

62.  In addition, based on the results of the previously mentioned investigative actions, there is probable cause to believe that the SUBJECT LOCATIONS and SUBJECT VEHICLES, identified more fully in ATTACHMENT A, contains the items set forth in ATTACHMENT B, which constitute evidence and instrumentalities of the same federal criminal violations mentioned above.

_____
RAFAEL TORRES
Special Agent
Homeland Security Investigations


Subscribed to and sworn before me
this 21 day of February, 2018.


_____
HON. FREDERICK F. MUMM
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

PREMISES TO BE SEARCHED

63.  The SUBJECT LOCATIONS and SUBJECT VEHICLES to be searched are described as follows:

**Attachment A-1**

a.  **407 S. Pomelo Avenue**:  A two-story, three bedroom, gray condominium/townhouse.  407 S. POMELO AVENUE is part of a multiunit residential building containing multiple adjoined apartment units ("Pomelo apartment building").  The Pomelo apartment building is located on the west side of S. Pomelo Avenue and faces east to west.  The individual units comprising the Pomelo apartment building are accessible via a metal gate located on the north side of building.  This gate leads to an exterior walkway running east to west along the northern side of the building. Each unit in the apartment building, including the subject location, has its own northward facing exterior entrance abutting the walkway running along the north side of the Pomelo apartment building.  The parking area for the Pomelo apartment building is located on the south side of the building.  A communal driveway, located on the south side of the building, slopes downward into a parking area.  Each unit within the Pomelo apartment building has its own individual covered garage that has a brown garage door, located directly beneath the first floor of the respective units.  Based on my observation of vehicle traffic going in and out of the building, I believe that each unit in the Pomelo apartment building may be accessed via a secondary door located in the garage of the respective unit.  The subject location is the easternmost unit in the building.

1

i.    Below is a screenshot photograph from the online geographic imaging service Google Maps, depicting the parking area of Pomelo apartment building, located on the southern side of the building.



ii.    On the east side of the Pomelo apartment building are two house numbers in black, approximately 12' tall, numbers 407 and 409.   407 S. POMELO AVENUE is the building described above, whereas 409 S. Pomelo Avenue is the building on the west side of the property, situated perpendicular to 407 S. POMELO AVENUE, and at the western most point of the driveway of the property.

iii. Below is a screenshot photograph from the online geographic imaging service Google Maps, depicting the northern side of the Pomelo apartment building.



Attachment A-2

   b. **763 FAIRVIEW AVENUE:** A two-story, three bedroom, beige condominium/townhouse, with blue trim, that is part of a multiunit residential building, containing multiple adjoined apartment units ("Fairview apartment building").  The Fairview apartment building is located on the north side of Fairview Avenue and faces north to south.  The individual units comprising the Fairview apartment building are accessible via is a metal gate located on the western side of building.  This gate leads to an exterior walkway running north to south along the western side of the building. Each unit in the apartment building, including 763 FAIRVIEW AVENUE, has its own westward-facing exterior entrance abutting the walkway running along the western side of the Fairview apartment building.  The parking area for the Fairview apartment building is located on the eastern side of the building.  A communal driveway, located on the eastern side of the building, slopes downward into a parking area.  Each unit within the Fairview apartment building possesses its own individual covered garage with a tan garage door located directly beneath the first floor of the respective units.  Based on my observation of vehicle traffic going in and out of the building, I believe that each unit in the Fairview apartment building may be accessed via a secondary door located in the garage of the respective units.  The subject location is the southernmost unit in the Fairview apartment building.  Accordingly, 763 FAIRVIEW AVENUE is the first unit on the left upon entering the Fairview apartment building's driveway, and the first unit on the right upon entering the Fairview apartment building's gated pedestrian entrance.

       i.   Below is a screenshot photograph taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building and its parking area, looking northward:



       ii.   Below is a screenshot photograph taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building, specifically Unit A, marked with a red arrow, looking northwestward:



iii. Below is a screenshot photographs taken from the Google Maps online geographic imaging system, depicting the eastern side of the Fairview apartment building and its gated pedestrian entrance, looking northward:



Attachment A-3

c.  **5324 TYLER AVENUE:**  A one-story home, made of redbrick and beige wood paneling, and has a black shingle roof. 5324 TYLER AVENUE is located on the eastern side of Tyler Avenue and faces east to west. A walkway leads directly from the sidewalk on Tyler Avenue to a small unenclosed porch area located on the northwest corner of the house. The reddish front door of the subject location is located on the southern side of the porch area, facing perpendicular to the street. 5324 TYLER AVENUE also has an attached enclosed storage area on the northern side of the building, accessible via a door on the western face of the building.  The property includes a detached two car garage located to the east of the main residence. The detached garage may be accessed via a rollup garage door on the east side of the building. The garage for 5324 TYLER AVENUE does not have a driveway. Instead, a communal alleyway runs between the houses on the eastern side of Tyler Avenue and the western side of Marshburn Avenue between the cross streets of Daines Drive to the north and Freer Street to the south.  This shared alleyway may be accessed via an entrance on the south side of Daines Drive or via a second entranceway on the southern side 5324 TYLER AVENUE.

i.  Below are screenshot photographs, taken from the Google Maps online geographic imaging system, showing the eastern side of 5324 TYLER AVENUE.  The door to the enclosed storage area is visible on the left-hand side of the property and is demarcated with a red arrow in each photograph.  Directly to the right of this door is the unenclosed front porch area of the property. The reddish front door of 5324 TYLER AVENUE is demarcated with a green arrow on

7

each photograph. On the right-hand side of the home is the entranceway to the alley running between the houses on the western side of Tyler Avenue and the eastern side of Marshburn Avenue between the cross streets of Daines Drive to the north and Freer Street to the south.







        ii.  This is an satellite view of 5324 TYLER AVENUE, taken from the Google Maps online geographic imaging system, with the main house circled in red, and the detached garage circled in green.



Attachment A-4

        d.    **SUBJECT VEHICLE #1:** A 2014 Dark Grey Honda Odyssey, California license plate 7FVF844, VIN 5FNRL5H60EB128378, registered in the name of Great Pacific Coast Corporation, 120 S. Pico Avenue, Long Beach, CA.

Attachment A-5

     e.    **SUBJECT VEHICLE #2:** A 2006 White Toyota Sienna, California license plate GWZ8888, VIN 5TDZA22C56S506307, registered in the name of WENZHU GUO, 6132 Hart Avenue, Temple City, CA.

## ATTACHMENT B

The items to be seized constitute fruits, instrumentalities, and evidence of crimes, for the period April 6, 2016 through the present, including, to wit:  Title 18, United States Code, Sections 371 (conspiracy to defraud the United States), 545 (smuggling of goods into the United States), and 2342(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes), and Title 26, United States Code, Sections 5762(a)(1) (engaging in the unlawful importation of tobacco products), 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond).

Based on the foregoing, the items to be seized are the following, for the period April 6, 2016 through the present:

1.   Cigarettes, cartons, tobacco products, and related packaging.

2.   Books, notebooks, documents, bills, ledgers, spreadsheets, notebooks, receipts, invoices, or other records, relating to the purchase, sale, importation, trafficking, distribution, or storage of cigarettes or tobacco products.

3.   Any rolodexes, contact logs, and address books, documenting the contact information (including names, phone numbers, and/or addresses) for customers and suppliers of cigarettes or tobacco products.

4.   Shipping, postage, and customs labels from the United States Postal Service, United Parcel Service, United States of America, China Post, and/or China.

5.    Originals and/or copies of any invoices, bills, or receipts related to the purchase of tobacco products or cigarettes by Yong Lu, aka DAVID LU, and Great Pacific Coast Corporation.

6.    Checks, money orders, and evidence of wire transfers to or from China.

7.    Cash, if the amount recovered is over $5,000.

8.    Correspondence and notes relating to the purchase, sale, importation, trafficking, distribution, or storage of Chinese or Asian brand tobacco products or cigarettes.

9.    Any stamps purporting or appearing to be vessel stamps associated with a designated shipping vessel.